**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| OPENTV, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. _____ |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| NETFLIX, INC., | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT FOR PATENT INFRINGEMENT**

1.     This patent infringement action is being filed by OpenTV, Inc. ("OpenTV"), a U.S. subsidiary company of Kudelski SA.  Kudelski SA and its subsidiaries, including Plaintiff OpenTV, Inc., make up the various companies of The Kudelski Group.  The history of The Kudelski Group is one highlighted by 60 years of innovation, award winning products, and loyal, long-term customers who entrust The Kudelski Group with their business.  Today, The Kudelski Group is a major employer in the United States, Europe, Asia, and elsewhere, providing jobs in manufacturing, engineering, research and development, marketing, sales, and many other specialties.

2.     In 1951, Stefan Kudelski created the first company in what became The Kudelski Group and launched the now legendary "Nagra" line of portable recording devices for cinema, TV and radio recording.  Stefan Kudelski's recording devices, and the inventions in them, were considered revolutionary throughout the movie industry.  The Nagra devices allowed precise synchronization of audio tape with film, providing filmmakers with studio sound quality during on-location filming.

3.     Throughout his career, Stefan Kudelski received numerous awards and honors for his technological achievements.  For example, Mr. Kudelski received four Oscars from the

Academy of Motion Picture Arts and Sciences: three Scientific or Technical Awards in 1965, 1977, 1978, and the Gordon E. Sawyer Award in 1990. Mr. Kudelski also received two Emmy Awards, as well as Gold Medals from L. Warner, Audio Engineering Society, Lyra and Eurotechnica. Mr. Kudelski also was recognized by the FBI for his technology contribution in audio recording.

4.     The success of the products that The Kudelski Group manufactured and sold in its early years allowed the company to grow and expand. In 1989, The Kudelski Group expanded the field of its technological innovation by launching its first conditional access systems for pay TV. Over the next decade (1990-1999), The Kudelski Group continued to expand its technology development in the digital television domain, providing global, universally compatible solutions to manage, organize, enhance, market, and secure digital content, regardless of whether it was transmitted over managed or unmanaged networks, broadcast linearly or on-demand.

5.     Today, digital television is The Kudelski Group's core business. The Kudelski Group has become a world leader in digital security and convergent media solutions for the delivery of digital and interactive content. The Kudelski Group's main focus is on innovating security and access control solutions that provide optimal levels of protection throughout the content distribution chain, from creation to consumption. The Kudelski Group's innovations are continuously contributing to the evolution of the digital television ecosystem, enabling operators to extend their multimedia offerings across the entire digital ecosystem to numerous client devices through traditional managed networks as well as Internet delivery.

6.     At the same time, The Kudelski Group has forged itself as a leader in the digital television domain through acquisitions of pioneering technology companies. Throughout its history, The Kudelski Group has made numerous corporate and technology acquisitions in the

space, including acquiring such notable companies as Lysis, Livewire, MediaGuard, SmarDTV, and Plaintiff, OpenTV, Inc. ("OpenTV").   The Kudelski Group also has other subsidiary companies and business units in other technology sectors, such as SkiData, which operates in the public access sector, NagraID, which manufactures smart cards, and the recently created Kudelski Security business offering companies a suite of personalized cyber-security services.

7.     OpenTV develops software that provides its customers with high quality technology, services, and end-to-end solutions enabling intuitive and personalized viewing experiences for consumers.   OpenTV's software solutions enable a variety of advanced and interactive services for television, including advanced user interfaces, video-on-demand ("VOD"), personal video recording ("PVR"), high-definition ("HD"), interactive and addressable advertising, and a variety of enhanced television applications.

8.     OpenTV's success as a member of The Kudelski Group is due in large part to its worldwide emphasis on intellectual property.   OpenTV benefits from one of the earliest and broadest patent portfolios in the industry.   OpenTV's patented technology has been vital in allowing OpenTV's customers to accelerate technological progress, enhance market opportunities, and improve profitability.

9.     Several statistics vividly illustrate the quality and commercial success of OpenTV's intellectual property as well as the significant investments that The Kudelski Group has made historically in research and development efforts.   For example, there are more than:

- 200 million digital set-top boxes and televisions that have been shipped to consumers with OpenTV software;

- 80 worldwide customers who run OpenTV solutions, including 40 OEMs who have ported OpenTV software to more than 250 digital set-top box models; and

- 815 patents owned by the OpenTV subsidiary of The Kudelski Group worldwide to date.

10.     Headquartered in San Francisco, California, OpenTV has offices throughout the world, including offices in the United States, France, Australia, and China.  OpenTV employs approximately 450 people worldwide, including more than 200 in the United States.  As a whole, nearly 400 people work for the various U.S. subsidiaries of The Kudelski Group in the United States.

11.     OpenTV vigorously protects its intellectual property and thus files this patent infringement complaint against Netflix, Inc. ("Netflix") after repeated, unsuccessful attempts to prevent the unlicensed use of OpenTV's patented technology.

12.     OpenTV asserts that Netflix willfully infringes the following seven U.S. Patents (the "Asserted Patents"):

- 6,018,768 entitled "Enhanced Video Programming System and Method for Incorporating and Displaying Retrieved Integrated Internet Information Segments" ("the '768 Patent") (Exhibit A hereto);

- 6,233,736 entitled "Media Online Service Access System and Method" ("the '736 Patent") (Exhibit B hereto);

- 7,055,169 entitled "Supporting Common Interactive Television Functionality Through Presentation Engine Syntax" ("the '169 Patent") (Exhibit C hereto);

- 7,409,437 entitled "Enhanced Video Programming System and Method for Incorporating and Displaying Retrieved Integrated Internet Information Segments" ("the '437 Patent") (Exhibit D hereto);

- 7,490,346 entitled "Digital Television Application Protocol for Interactive Television" ("the '346 Patent") (Exhibit E hereto);

- 7,949,722 entitled "Enhanced Video Programming System and Method Utilizing User-Profile Information" ("the '722 Patent") (Exhibit F hereto); and

- 8,107,786 entitled "Systems and Methods to Modify Playout or Playback" ("the '786 Patent") (Exhibit G hereto).

13.     OpenTV seeks damages in an amount adequate to compensate OpenTV for Netflix's infringement, increased damages for willful infringement, a permanent injunction

barring Netflix from continuing to infringe OpenTV's patents, and OpenTV's attorneys' fees and costs associated with this action.

## BACKGROUND OF THE TECHNOLOGY

14.     The technology at issue in this case pertains generally to the fields of access, selection, control, securitization, and delivery of content, and specifically here, in the field of Over-the-Top ("OTT") delivery of content (such as movies, television, and other media) over the Internet.

15.     OTT delivery is done through an ordinary Internet connection that is not tied to the type of content being delivered.

16.     In the OTT model, an Internet service provider is responsible only for ensuring that data can be received by the consumer through a provided Internet connection.  Third-party content providers can then utilize this connection to deliver any desired content to the consumer. Because the OTT model evolved out of the TV and Internet spaces, OTT providers, like Netflix, tend to benefit heavily from the capital expenditures and investments in technology made in the past by both (i) broadband network providers to develop the kind of reliable Internet service needed to support the high bandwidth usage demanded by OTT delivery, and (ii) traditional pay TV operators to develop systems to deliver their services to consumers via cable and satellite systems.

17.     OTT content, including OTT content delivered by Netflix, can often be viewed on a myriad of connected devices, such as televisions, gaming consoles, personal computers, tablets, smartphones, and many other connected devices.

18.     According to Accenture research, half of all U.S. consumers now watch OTT video through broadband connections on their televisions.  Among viewers between the ages of

eighteen and twenty-four, 82% watch OTT video.  Consumers are also increasingly turning to smartphones and other mobile devices to view OTT video.

19.     In particular, according to Netflix's CEO, Reed Hastings, in a letter to Netflix shareholders provided on or about October 23, 2012, in Q3 2012, Netflix's global streaming membership grew by nearly 2 million new subscribers.  At that time, the 29 million subscribers of its streaming service enjoyed over 3 billion hours of television shows and movies from Netflix.

20.     OTT is in the midst of substantial growth.  According to ABI Research, OTT revenue is expected to quadruple to $32 billion by 2017, up from an expected $8.2 billion in 2012.

21.     Despite its advantages, there are significant technological challenges associated with OTT, such as the difficulty of storing and navigating through and serving millions of video programs, managing the required digital rights management ("DRM") licensing, authenticating OTT users, allowing for user-friendly playback interfaces, and targeting specified content to OTT users, among others.  These challenges have created a strong need for research and innovation in the field.

22.     Over the past 20 years, OpenTV and other sister companies within The Kudelski Group have developed many of the underlying technologies that new OTT entrants, such as Netflix, are building on top of their networks to provide their services.  Companies like Netflix have, in essence, stood on the shoulders of giants, largely focusing their R&D efforts on aggregating these previously patented technologies and using them to provide a rich customer experience.

23.     OpenTV has been, and remains, an industry leader in developing the technologies required to overcome the significant technical challenges to permit the tremendous growth of OTT.

## THE PARTIES

**A.     OpenTV, Inc.**

24.     OpenTV is a Delaware corporation whose principal place of business in the United States is located in San Francisco, California.

25.     OpenTV was founded in 1996 as Thomson Sun Interactive, LLC.  In 1997, an agreement was reached to convert Thomson Sun Interactive, LLC into a newly formed corporation—OpenTV, Inc., with the transaction completed in 1998.

26.      From its inception, OpenTV has been dedicated to developing and commercializing cutting-edge, patented technology required for the delivery of television and other media content to consumers through cable, satellite, and terrestrial networks, and other managed and unmanaged networks, including OTT content delivery.

27.     In 1998, OpenTV achieved one of its first major commercial successes by launching the software used to power one of the world's first interactive TV banking and financial services technology.

28.     By 1999, OpenTV's middleware solutions for set-top boxes were incorporated in over 4.5 million devices worldwide.

29.     OpenTV's commercial and technological success quickly grew.  In 2000, less than four years from its creation, OpenTV became the first interactive television middleware provider to integrate its middleware technology in more than 10 million set-top boxes worldwide—more than all industry competitors combined.  OpenTV also partnered with EchoStar's DISH Network, which was the first satellite company to provide interactive

television services in the United States.  OpenTV's set-top box middleware technologies were key to the successful growth of DISH Network.

30.     OpenTV's success in the set-top box middleware market continued throughout the early 2000's to today.  OpenTV has partnerships with companies worldwide, and OpenTV's middleware has now been incorporated into over 200 million set-top boxes.

31.     Companies worldwide have acknowledged the commercial importance of OpenTV's patent portfolio, taking licenses to OpenTV patents relevant to their businesses. Exemplary licensees to OpenTV patents include a major satellite pay TV operator and leading OTT companies.

32.     In addition to its industry-leading set-top box middleware solutions, OpenTV has been an innovator in web-based content delivery.

33.     From 2000-2004, OpenTV continued to expand its worldwide presence by acquiring other innovative content delivery technology companies, such as Wink Communications and ACTV, Inc., as well as Spyglass, Inc., the first company to offer commercially a World Wide Web browser.

34.     As a result of its ongoing commitment to interactive television and web-based content delivery, by 2004-2006, OpenTV led the industry in integrating browser software into television sets, built the first interactive shopping application for DISH Network and Comcast, successfully launched real-time two-way interactive television shopping services on QVC, and provided the technology for CNN Interactive, among other notable achievements.  All of these innovations helped to pave the way for the growing revolution in how media content is delivered and enjoyed, including over the Internet.

35.     In addition to these achievements, OpenTV also developed complementary technology related, for example, to personal video recording ("PVR"), video-on-demand ("VOD"), television home networking, and tools for recommending content to viewers.   The industry has long recognized OpenTV's technology contributions, with OpenTV's PVR named as one of the best in its field by Seagate Technology in 2009.

36.     OpenTV became a part of The Kudelski Group in 2007 through The Kudelski Group's acquisition of a controlling stake in the company.   In 2010, The Kudelski Group acquired the remaining shares from minority shareholders and OpenTV became a wholly-owned subsidiary of The Kudelski Group.

37.     OpenTV's integration into The Kudelski Group has allowed for commercial and technological synergies between other Kudelski Group companies and continued innovation in the delivery of digital content and OTT technologies.

38.     Through its dedication to developing innovative technologies, OpenTV's technology has contributed to the explosive growth of OTT companies, including Netflix.

39.     OpenTV and The Kudelski Group devote substantial resources to research and development.   In fact, The Kudelski Group companies have invested over $3 billion in R&D in the past 20 years.

40.     To protect their investment in R&D, OpenTV and the other Kudelski Group companies have garnered a robust international portfolio of over 3,100 worldwide patents, including many related to the delivery of end-to-end secure media solutions for digital content, and continue to substantially grow their worldwide patent positions in this and other complementary technology areas.

41.     These patents include key technologies related to content management and delivery systems, content recommendation engines and targeted content delivery, subscriber management systems and tools, DRM and other content access control techniques, billing and payment systems, user interfaces, digital video recorder ("DVR") content storage and scheduling, end-to-end digital content security, including securing digital content within the home network, VOD content selection, advanced advertising techniques, and many others.

42.     To ensure that they will continue their tradition of innovation into the future, OpenTV and The Kudelski Group employ approximately 3,000 talented people worldwide.

**B.     Netflix, Inc.**

43.     Netflix is a Delaware corporation with a principal place of business in Los Gatos, California.

44.     Netflix is a leading OTT provider allowing subscribers to locate, access, secure, and playback content such as movies and television shows over the Internet for a subscription fee.

45.     Netflix originally launched its OTT content streaming service in or about 2007, long after the patents-at-issue in this case were filed.

46.     Streaming online content using OTT is a substantial part of Netflix's business. Netflix predicts that it will generate over $2.4 billion in revenue alone in 2012 through its content streaming business.

47.     Future growth of its content streaming business is a core Netflix business strategy.

48.     Netflix relies heavily on technology to stream content.

49.     The performance of software and computer systems plays a key role in Netflix's ability to compete effectively.

50.     Content recommendation features also are critical to Netflix's business.  If Netflix is unable to predict and recommend titles that its subscribers will enjoy, Netflix's ability to attract and retain subscribers may be adversely affected and its subscribers may default to choosing content that costs Netflix more to provide, causing Netflix's profit margin to suffer.

51.     Netflix is aware that OpenTV has patents relevant to Netflix's operations.

52.     Netflix is aware that many companies are devoting significant resources to developing patents that could potentially affect many aspects of Netflix's business.

53.     Netflix has not searched patents relative to its operations.

## JURISDICTION AND VENUE

54.     This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq*.  The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, and 1338(a).

55.     This Court has personal jurisdiction over Netflix because Netflix is a Delaware corporation and has committed, contributed to, and induced acts of patent infringement and has regularly and systematically conducted and solicited business in this district by and through its OTT content streaming service.

56.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b) because Netflix is subject to personal jurisdiction in this district and therefore resides in this district.

## THE PATENTS INFRINGED BY NETFLIX

### A.     U.S. Patent No. 7,490,346

57.     OpenTV is the owner by assignment of all rights, title, and interest in the '346 Patent.

58.     The '346 Patent generally relates, among other things, to communication protocols for interactive programming environments using a content delivery network ("CDN").

59.     Netflix infringes the '346 Patent through at least the CDN messaging used in its on-demand video streaming service.

**B.      U.S. Patent No. 7,055,169**

60.     OpenTV is the owner by assignment of all rights, title, and interest in the '169 Patent.

61.     The '169 Patent generally relates, among other things, to the presentation of interactive programming content using directives such as HTML, scripting languages, or other languages.

62.     Netflix infringes the '169 Patent through at least the use of directives in connection with providing its on-demand video streaming service.

**C.      U.S. Patent No. 7,949,722**

63.     OpenTV is the owner by assignment of all rights, title, and interest in the '722 Patent.

64.     The '722 Patent generally relates, among other things, to the utilization of user-profile information to provide recommendations for content to a viewer of video programming.

65.     Netflix infringes the '722 Patent through at least its recommendation system for its on-demand video streaming service.

**D.      U.S. Patent No. 6,018,768**

66.     OpenTV is the owner by assignment of all rights, title, and interest in the '768 Patent.

67.     The '768 Patent generally relates, among other things, to a system for integrating video programming and Internet information.

68.     Netflix infringes the '768 Patent through at least the operation of its fast forward and fast rewind Trick Play functionality.

**E.      U.S. Patent No. 7,409,437**

69.      OpenTV is the owner by assignment of all rights, title, and interest in the '437 Patent.

70.      The '437 Patent generally relates, among other things, to presenting information retrieved from an online source in conjunction with displaying a video/audio program.

71.      Netflix infringes the '437 Patent through at least the operation of its fast forward and fast rewind Trick Play functionality.

**F.      U.S. Patent No. 8,107,786**

72.      OpenTV is the owner by assignment of all rights, title, and interest in the '786 Patent.

73.      The '786 Patent generally relates, among other things, to modifying playback of content based on a response to a fast forward or fast rewind request.

74.      Netflix infringes the '786 Patent through at least the operation of its fast forward and fast rewind Trick Play functionality.

**G.      U.S. Patent No. 6,233,736**

75.      OpenTV is the owner by assignment of all rights, title, and interest in the '736 Patent.

76.      The '736 Patent generally relates, among other things, to displaying the availability of online information during a video program and allowing a user viewing the video program to initiate retrieval of the online information.

77.      Netflix infringes the '736 Patent through at least its "Next Episode" and "More Episode" navigation functionality as part of its user interface.

## NETFLIX'S WILLFUL INFRINGEMENT

78.    On December 15, 2011, OpenTV wrote to Reed Hastings, CEO of Netflix, and notified him of the existence of the OpenTV patent portfolio generally, as well as several of the Asserted Patents specifically.  OpenTV explained that its technology may be relevant to several aspects of Netflix's services, and invited Mr. Hastings to contact OpenTV to discuss the matter further.

79.    Mr. Hastings did not contact OpenTV to discuss the matter further.

80.    No one at Netflix responded, via telephone or in writing, to OpenTV's December 15, 2011 letter.

81.    On January 13, 2012, after receiving no response to its initial letter, OpenTV sent another letter to Mr. Hastings.

82.    OpenTV's January 13, 2012 letter to Mr. Hastings discussed the OpenTV patents in light of Netflix's interactive video interface.

83.    During the following months, OpenTV personnel attempted to contact the CEO and General Counsel of Netflix to discuss its request for a meeting but were met with silence.

84.    In May 2012, Joe Chernesky, Senior Vice President, Intellectual Property, contacted Netflix's Associate General Counsel, Technology and Transactions, requesting a meeting to discuss licensing OpenTV's patents, and other patents held by The Kudelski Group companies, as requested in the December and January letters.

85.    After several additional attempts, Netflix's Associate General Counsel, Technology and Transactions, finally responded in late June 2012 via e-mail, stating that Netflix is not inclined to meet with The Kudelski Group.

86.    In a detailed e-mail dated June 26, 2012, Mr. Chernesky reiterated the relevance of The Kudelski Group companies' patent portfolio to Netflix, including OpenTV's patents, and

expressed a willingness to engage in formal, good faith, licensing discussions with Netflix about a portfolio license.

87.     After much delay, on July 16, 2012, Netflix finally agreed to meet in person at Netflix's headquarters in Los Gatos, California on September 28, 2012.  The Associate General Counsel, Technology and Transactions, and one other Netflix attorney were present at the meeting.  The Kudelski Group was represented at the meeting by Joe Chernesky and William Goldman, Vice President, Intellectual Property.  Messrs. Chernesky and Goldman presented an overview of The Kudelski Group's history of innovation, identified a number of patents relevant to Netflix's OTT service, including a mapping of the Asserted Patents to a representative OTT platform, such as that implemented by Netflix, and discussed the potential framework for a patent license.

88.     On October 19, 2012, Netflix's Associate General Counsel, Technology and Transactions, replied by e-mail that Netflix may be interested in "going through a set of" The Kudelski Group companies' patents.  Following a brief phone call, on November 7, 2012, The Kudelski Group provided a draft non-disclosure agreement to Netflix to govern subsequent discussions between the companies.

89.     Netflix never responded to the November 7 e-mail or subsequent e-mails from The Kudelski Group.

90.     Netflix does not have a license to any of the Asserted Patents.

91.     Despite having notice of the OpenTV patent portfolio, including specific notice of at least some of the Asserted Patents, since at least December 2011, Netflix has continued its infringement.

92.     Netflix's failure to compensate OpenTV for Netflix's ongoing patent infringement is part of a deliberate effort by Netflix to ignore the intellectual property rights of its competitors, even when made aware of specific patents infringed by Netflix.

## COUNT I - INFRINGEMENT OF U.S. PATENT NO. 7,490,346

93.     OpenTV incorporates by reference into this Count I paragraphs 1 through 92.

94.     Pursuant to 35 U.S.C. § 284, the '346 Patent is presumed valid.

95.     Pursuant to 35 U.S.C. § 271, Netflix has infringed and continues to directly infringe, actively induce and/or contribute to infringement of the '346 Patent by making, using, selling, offering to sell and/or importing software to be installed and executed on one or more connected devices of its subscribers in order to deliver on-demand Internet streaming media to its subscribers with knowledge that use of that software by Netflix subscribers in conjunction with Netflix's own computer processes and content delivery infrastructure platform and/or those of its CDN partners would infringe the '346 patent, which software has been especially made for use in an infringement of the '346 Patent and is not a staple article or commodity of commerce suitable for substantial noninfringing use.

96.     Netflix knew of the '346 Patent prior to the filing of this action at least as a result of The Kudelski Group's identification of the '346 Patent to Netflix at the September 28, 2012 meeting between Netflix and The Kudelski Group, and at the very least by virtue of filing this Complaint.

97.     Netflix's infringement has been and continues to be willful.

98.     OpenTV has suffered and continues to suffer damages and irreparable harm as a result of Netflix's past and ongoing infringement.

99.     Unless Netflix's infringement is enjoined, OpenTV will continue to be damaged and irreparably harmed.

100.    OpenTV meets the criteria for, and is entitled to, a permanent injunction.

**COUNT II - INFRINGEMENT OF U.S. PATENT NO. 7,055,169**

101.    OpenTV incorporates by reference into this Count II paragraphs 1 through 92.

102.    Pursuant to 35 U.S.C. § 284, the '169 Patent is presumed valid.

103.    Pursuant to 35 U.S.C. § 271, Netflix has infringed and continues to directly infringe, actively induce and/or contribute to infringement of the '169 Patent by making, using, selling, offering to sell and/or importing software to be installed and executed on one or more connected devices of its subscribers in order to deliver on-demand Internet streaming media to its subscribers with knowledge that use of that software by Netflix subscribers in conjunction with Netflix's own computer processes and content delivery infrastructure platform would infringe the '169 patent, which software has been especially made for use in an infringement of the '169 Patent and is not a staple article or commodity of commerce suitable for substantial noninfringing use.

104.    Netflix knew of the '169 Patent prior to the filing of this action at least as a result of The Kudelski Group's identification of the '169 Patent to Netflix at the September 28, 2012 meeting between Netflix and The Kudelski Group, and at the very least by virtue of filing this Complaint.

105.    Netflix's infringement has been and continues to be willful.

106.    OpenTV has suffered and continues to suffer damages and irreparable harm as a result of Netflix's past and ongoing infringement.

107.    Unless Netflix's infringement is enjoined, OpenTV will continue to be damaged and irreparably harmed.

108.    OpenTV meets the criteria for, and is entitled to, a permanent injunction.

## COUNT III - INFRINGEMENT OF U.S. PATENT NO. 7,949,722

109.    OpenTV incorporates by reference into this Count III paragraphs 1 through 92.

110.    Pursuant to 35 U.S.C. § 284, the '722 Patent is presumed valid.

111.    Pursuant to 35 U.S.C. § 271, Netflix has infringed and continues to directly infringe, actively induce and/or contribute to infringement of the '722 Patent by making, using, selling, offering to sell and/or importing software to be installed and executed on one or more connected devices of its subscribers in order to recommend and deliver targeted on-demand Internet streaming media to its subscribers with knowledge that use of that software by Netflix subscribers in conjunction with Netflix's own computer processes and content delivery infrastructure platform would infringe the '722 patent, which software has been especially made for use in an infringement of the '722 Patent and is not a staple article or commodity of commerce suitable for substantial noninfringing use.

112.    Netflix knew of the '722 Patent prior to the filing of this action at least as a result of The Kudelski Group's identification of the '722 Patent to Netflix at the September 28, 2012 meeting between Netflix and The Kudelski Group, and at the very least by virtue of filing this Complaint.

113.    Netflix's infringement has been and continues to be willful.

114.    OpenTV has suffered and continues to suffer damages and irreparable harm as a result of Netflix's past and ongoing infringement.

115.    Unless Netflix's infringement is enjoined, OpenTV will continue to be damaged and irreparably harmed.

116.    OpenTV meets the criteria for, and is entitled to, a permanent injunction.

## COUNT IV - INFRINGEMENT OF U.S. PATENT NO. 6,018,768

117.    OpenTV incorporates by reference into this Count IV paragraphs 1 through 92.

118.    Pursuant to 35 U.S.C. § 284, the '768 Patent is presumed valid.

119.    Pursuant to 35 U.S.C. § 271, Netflix has infringed and continues to directly infringe, actively induce and/or contribute to infringement of the '768 Patent by making, using, selling, offering to sell and/or importing software to be installed and executed on one or more connected devices of its subscribers in order to enable Trick Play functionality in conjunction with the delivery of on-demand Internet streaming media to its subscribers with knowledge that use of that software by Netflix subscribers in conjunction with Netflix's own computer processes and content delivery infrastructure platform would infringe the '768 patent, which software has been especially made for use in an infringement of the '768 Patent and is not a staple article or commodity of commerce suitable for substantial noninfringing use.

120.    Netflix knew of the '768 Patent prior to the filing of this action at least as a result of receiving OpenTV's December 15, 2011, and January 13, 2012 notice letters to Netflix specifically identifying the '768 Patent, as well as a result of The Kudelski Group's identification of the '768 Patent to Netflix at the September 28, 2012 meeting between Netflix and The Kudelski Group, and at the very least by virtue of filing this Complaint.

121.    Netflix's infringement has been and continues to be willful.

122.    OpenTV has suffered and continues to suffer damages and irreparable harm as a result of Netflix's past and ongoing infringement.

123.    Unless Netflix's infringement is enjoined, OpenTV will continue to be damaged and irreparably harmed.

124.    OpenTV meets the criteria for, and is entitled to, a permanent injunction.

## COUNT V - INFRINGEMENT OF U.S. PATENT NO. 7,409,437

125.    OpenTV incorporates by reference into this Count V paragraphs 1 through 92.

126.    Pursuant to 35 U.S.C. § 284, the '437 Patent is presumed valid.

127.    Pursuant to 35 U.S.C. § 271, Netflix has infringed and continues to directly infringe, actively induce and/or contribute to infringement of the '437 Patent by making, using, selling, offering to sell and/or importing software to be installed and executed on one or more connected devices of its subscribers in order to enable Trick Play functionality in conjunction with the delivery of on-demand Internet streaming media to its subscribers with knowledge that use of that software by Netflix subscribers in conjunction with Netflix's own computer processes and content delivery infrastructure platform would infringe the '437 patent, which software has been especially made for use in an infringement of the '437 Patent and is not a staple article or commodity of commerce suitable for substantial noninfringing use.

128.    Netflix knew of the '437 Patent prior to the filing of this action at least as a result of The Kudelski Group's identification of the '437 Patent to Netflix at the September 28, 2012 meeting between Netflix and The Kudelski Group, and at the very least by virtue of filing this Complaint.

129.    Netflix's infringement has been and continues to be willful.

130.    OpenTV has suffered and continues to suffer damages and irreparable harm as a result of Netflix's past and ongoing infringement.

131.    Unless Netflix's infringement is enjoined, OpenTV will continue to be damaged and irreparably harmed.

132.    OpenTV meets the criteria for, and is entitled to, a permanent injunction.

### COUNT VI - INFRINGEMENT OF U.S. PATENT NO. 8,107,786

133.    OpenTV incorporates by reference into this Count VI paragraphs 1 through 92.

134.    Pursuant to 35 U.S.C. § 284, the '786 Patent is presumed valid.

135.    Pursuant to 35 U.S.C. § 271, Netflix has infringed and continues to directly infringe, actively induce and/or contribute to infringement of the '786 Patent by making, using,

selling, offering to sell and/or importing software to be installed and executed on one or more connected devices of its subscribers in order to enable Trick Play functionality in conjunction with the delivery of on-demand Internet streaming media to its subscribers with knowledge that use of that software by Netflix subscribers in conjunction with Netflix's own computer processes and content delivery infrastructure platform would infringe the '786 patent, which software has been especially made for use in an infringement of the '786 Patent and is not a staple article or commodity of commerce suitable for substantial noninfringing use.

136.    Netflix knew of the '786 Patent prior to the filing of this action at least as a result of The Kudelski Group's identification of the '786 Patent to Netflix at the September 28, 2012 meeting between Netflix and The Kudelski Group, and at the very least by virtue of filing this Complaint.

137.    Netflix's infringement has been and continues to be willful.

138.    OpenTV has suffered and continues to suffer damages and irreparable harm as a result of Netflix's past and ongoing infringement.

139.    Unless Netflix's infringement is enjoined, OpenTV will continue to be damaged and irreparably harmed.

140.    OpenTV meets the criteria for, and is entitled to, a permanent injunction.

**COUNT VII - INFRINGEMENT OF U.S. PATENT NO. 6,233,736**

141.    OpenTV incorporates by reference into this Count VII paragraphs 1 through 92.

142.    Pursuant to 35 U.S.C. § 284, the '736 Patent is presumed valid.

143.    Pursuant to 35 U.S.C. § 271, Netflix has infringed and continues to directly infringe, actively induce and/or contribute to infringement of the '736 Patent by making, using, selling, offering to sell and/or importing software to be installed and executed on one or more connected devices of its subscribers in order to enable user interface navigation functionality

with the delivery of on-demand Internet streaming media to its subscribers with knowledge that use of that software by Netflix subscribers in conjunction with Netflix's own computer processes and content delivery infrastructure platform would infringe the '736 patent, which software has been especially made for use in an infringement of the '736 Patent and is not a staple article or commodity of commerce suitable for substantial noninfringing use.

144.    Netflix knew of the '736 Patent prior to the filing of this action at least as a result of receiving OpenTV's December 15, 2011, and January 13, 2012 notice letters to Netflix specifically identifying the '736 Patent, as well as a result of The Kudelski Group's identification of the '736 Patent to Netflix at the September 28, 2012 meeting between Netflix and The Kudelski Group, and at the very least by virtue of filing this Complaint.

145.    Netflix's infringement has been and continues to be willful.

146.    OpenTV has suffered and continues to suffer damages and irreparable harm as a result of Netflix's past and ongoing infringement.

147.    Unless Netflix's infringement is enjoined, OpenTV will continue to be damaged and irreparably harmed.

148.    OpenTV meets the criteria for, and is entitled to, a permanent injunction.

## PRAYER FOR RELIEF

OpenTV respectfully asks that the Court enter judgment:

a)    finding that Netflix has infringed each of the Asserted Patents;

b)    awarding OpenTV damages adequate to compensate OpenTV for Netflix's infringement, but in no event less than a reasonable royalty;

c)    finding that Netflix's infringement of each of the Asserted Patents has been willful;

d)      awarding an accounting and supplemental damages for those acts of infringement committed by Netflix subsequent to the discovery cut-off date in this action through the date Final Judgment is entered;

e)      awarding OpenTV increased damages based on Netflix's willful infringement;

f)      finding that this case is exceptional;

g)      awarding OpenTV its attorneys' fees and costs, together with pre-judgment and post-judgment interest;

h)      permanently enjoining Netflix from further acts of infringement of the OpenTV patents; and

i)      awarding any other relief the Court deems to be just and proper.

## JURY DEMAND

OpenTV demands a jury trial on all issues so triable.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Russell E. Levine, P.C.
Paul D. Collier
Matthew V. Topic
G. William Foster
Gregory Polins
KIRKLAND & ELLIS LLP
300 N. LaSalle St.
Chicago, IL 60654
Tel: (312) 862-2000

Dated:  December 19, 2012
1087317 / 39750

By:   */s/ Richard L. Horwitz*
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Bindu A. Palapura (#5370)
      Hercules Plaza 6th Floor
      1313 N. Market Street
      Wilmington, DE  19801
      Tel:  (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com
      bpalapura@potteranderson.com

*Attorneys for Plaintiff OpenTV, Inc.*