IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OPENTV, INC., <br><br> Plaintiff, <br><br> v. <br><br> NETFLIX, INC., <br><br> Defendant. | Civil Action No. 12-1733 (GMS) |

## MEMORANDUM

### I. INTRODUCTION

On December 19, 2012, the plaintiff OpenTV, Inc. ("OpenTV") filed suit against the defendant Netflix, Inc. ("Netflix"). (D.I. 1.) In its complaint, OpenTV alleged that Netflix infringed U.S. Patent Nos. 6,018,786, 6,233,736, 7,055,169, 7,409,437, 7,490,346, 7,949,722, and 8,107,786 (collectively, "the Patents-in-Suit"). (*Id.* at ¶¶ 12, 14.) The Patents-in-Suit relate to technologies that facilitate over-the-top ("OTT") delivery of movies, television, and other media over the internet. (*Id.* at ¶ 14.)

Presently before this court is Netflix's motion to transfer to the United States District Court for the Northern District of California. (D.I. 13.) Because the court concludes there is sufficient reason to transfer the instant action to the Northern District of California, the court will grant the motion to transfer.

### II. BACKGROUND

OpenTV is a Delaware corporation with its principal place of business in San Francisco, California. (D.I. 1 at ¶ 24.) It claims that it has been responsible for developing many of the underlying technologies that facilitate OTT delivery of content over the internet. (*Id.* at ¶¶ 14, 22.)

In its complaint, OpenTV describes its presence, both in terms of offices and use of its technology, as "worldwide" and states that it has approximately 450 employees throughout the United States, France, Australia, and China. (*Id.* at ¶¶ 10, 31, 33.)

Netflix is a Delaware corporation with its principal place of business in Los Gatos, California. (*Id.* at ¶ 43; D.I. 11 at ¶ 43.) Netflix also has an office in Beverly Hills, California. (D.I. 15 at ¶ 2.) Netflix's business consists of providing users with a subscription service that allows them to search for and watch video content over an internet connection. (D.I. 1 at ¶ 44; D.I. 11 at ¶ 44.) Part of its service is sometimes described as OTT. (*Id.*)

### III. STANDARD OF REVIEW

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.* Under Section 1404(a), the court undertakes a two-step inquiry in order to resolve a motion to transfer. First, the court determines "whether the action could have been brought originally in the proposed transferee forum." *Linex Technologies, Inc. v. Hewlett-Packard Co.*, No. 11-400-GMS, 2013 WL 105323, *1 (D. Del. Jan. 7, 2013). Second, the court looks to private and public interests protected by Section 1404(a), to determine "whether transfer would best serve the convenience of the parties and witnesses as well as the interests of justice." *Smart Audio Technologies, LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 724 (D. Del. 2012).

In *Jumara v. State Farm Insurance Company*, the Third Circuit provided various private and public interests for district courts to consider. 55 F.3d 873, 879 (3d Cir. 1995). According to the Third Circuit, the private interests may include the plaintiff's original choice, the defendant's choice, where the claim arose, the parties' physical and financial conditions, the convenience of

witnesses involved, and the location of the books and records related to the Patents-in-Suit. *Id.* The public interests include the enforceability of the judgment, practical considerations, any administrative difficulties in the two fora, and the trial judges' familiarity with applicable state law in diversity cases. *Id.*

## IV. DISCUSSION

Netflix asserts that this action could have been brought in the Northern District of California, (D.I. 14 at 8), and OpenTV does not deny this, (D.I. 19). Thus, the court proceeds to consider the *Jumara* public and private interest factors.

Regarding the parties' forum choices, OpenTV contends that its preference of Delaware should be accorded substantial weight. (D.I. 19 at 3.) Netflix asserts that OpenTV's preference should not be accorded substantial weight because OpenTV chose to litigate in a state in which OpenTV is not physically located. (D.I. 23 at 2.) This court concludes that Netflix is correct. Although the plaintiff's choice of venue is ordinarily entitled to deference, *see Jumara*, 55 F.3d at 879, its preference is "entitled to less than the paramount consideration" when it files suit where it is incorporated but not physically located, *see Linex Technologies,* 2013 WL 105323, at *3. *See also In re Link—A—Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011). Here, OpenTV's preferred forum is Delaware, where it is incorporated, but OpenTV's principal place of business is in Northern California. (D.I. 1 at ¶ 24.) Therefore, the court will not accord substantial weight to OpenTV's choice of Delaware. Unlike OpenTV, Netflix's preferred forum is Northern California. This is a legitimate choice because California is where both parties' principal place of business is located. Ultimately, the court concludes that the parties' forum choice weighs slightly in favor of transfer.

3

Regarding where the claim arose, Netflix contends that "[a]ll of the accused Netflix functionality was designed and developed by Netflix in the Northern District of California." (D.I. 14 at 10.) For its part, OpenTV does not deny Netflix's assertion, but suggests that OpenTV's infringement claim arises in all districts because Netflix delivers its video streaming service nationwide. (D.I. 19 at 5.) Although a claim for patent infringement arises wherever someone has committed acts of infringement, which in this case can be viewed as occurring in all districts, "infringement claims have even deeper roots in the forum where the accused products were developed." *Linex Technologies*, 2013 WL 105323, at *4; *see Smart Audio Techs.*, 910 F. Supp. 2d at 730; *Wacoh Co. v. Kionix, Inc.*, 845 F. Supp. 2d 597, 602 (D. Del. 2012). Thus, this factor weighs slightly in favor of transfer because the products alleged to be infringing were developed and designed in the Northern District of California.

In evaluating the convenience of the parties, the court considers: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Smart Audio*, 910 F. Supp. 2d at 731 (citation omitted). Netflix contends that litigating in Northern California would be more convenient for the parties because both parties are physically located in Northern California. (D.I. 14 at 11-12.) Therefore, Netflix contends, the logistical costs of litigation would be reduced if the parties were not required to travel to Delaware. (*Id.*) OpenTV counters that "Netflix is an international corporation with billions of dollars in revenue ... and is clearly capable of litigating in [Delaware]." (D.I. 19 at 6.) OpenTV is correct in its suggestion that the court considers the relative financial ability of each party to bear litigation-related travel costs.

*ChriMar Sys., Inc. v. Cisco Sys., Inc.*, No. 11-1050-GMS, 2013 WL 828220, *5 (D. Del. Mar. 6, 2013). It is also the case, however, that the court must "account for the absolute costs likely to flow from its transfer decision." *Id.* As a result, while both parties may be financially able to litigate in Delaware, it would undoubtedly reduce litigation costs and be more convenient for the parties to litigate where they are physically located. Consequently, the court concludes that this factor weighs strongly in favor of transfer to Northern California.

Regarding the location of books and records, Netflix contends that all of the relevant documentation is in Northern California. (D.I. 14 at 14.) OpenTV counters that Netflix fails to allege that the books and records cannot be made available in Delaware. (D.I. 19 at 10.) The court agrees with OpenTV. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). This factor is not entitled to much weight, however, if the files can be produced in each of the fora with little difficulty. *See ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 571 (D. Del. 2001) ("With new technologies for storing and transmitting information, the burden of gathering and transmitting documents 3,000 miles is probably not significantly more than it is to transport them 30 miles."); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 205 (D. Del. 1998) (finding that the location of records and other documents weighed only minimally in favor of transfer given the technological advances of recent years). Therefore, while all of the relevant documents are apparently located in Northern California, this factor does not weigh in favor of transfer where Netflix has not articulated a reason why the books and records cannot be produced in Delaware. This factor weighs slightly against transfer.

Regarding the convenience of the witnesses, OpenTV asserts that "the convenience of witnesses is only to be considered to the extent that a witness would be unavailable for trial in the forum." (D.I. 19 at 6.) Additionally, OpenTV suggests that the witnesses are likely to appear for trial in Delaware because some are subject to prior employment agreements that require them to assist in the protection and enforcement of intellectual property rights. (D.I. 19 at 7.) For its part, Netflix asserts that "none of the inventors of the asserted patents appear to live in Delaware or be within the subpoena power of this court." (D.I. 14 at 2.) Indeed, at least four of the inventors of the Patents-in-Suit are California-based, but none of the inventors of the asserted patents are located in Delaware. (D.I. 16 at ¶ 2; D.I. 20 at ¶ 2.) Additionally, Netflix contends that California-based third party prior art witnesses will be necessary at trial. (D.I. 14 at 12-14.)

The court concludes that, in light of the likely unavailability of the inventors and the inconvenience to third party prior art witnesses, the the convenience of the witnesses weighs in favor of transfer. The location of the inventors is important because it is likely that the testimony of at least some of these inventors will be necessary for trial. *See Pragmatus AV, LLC v. Yahoo! Inc.*, No. 11-902-LPS-CJB, 2012 WL 4889438, at *10-11 (D. Del. Oct. 15, 2012) (finding inconvenience to third party witnesses weighed slightly in favor of transfer because "[t]he court can assume…the inventors of the [P]atents-in-[S]uit will be likely to provide relevant testimony…"). The fact that these inventors are outside the court's subpoena power militates in favor of transfer here. *See Linex Technologies*, 2013 WL 105323, at *5 ("It is enough that likely witnesses reside beyond the court's subpoena power and there is reason to believe those witnesses will refuse to testify absent a subpoena."). Furthermore, although OpenTV counters that Netflix has not explained how its prior art witnesses are necessary, (D.I. 19 at 6-9), the court finds Netflix's

arguments persuasive. Netflix has explained why the prior art witness testimony may be necessary, that it has no prior relationship with these individuals that might compel them to testify in Delaware, and that travel from California to Delaware would present an inconvenience. (D.I. 14 at 12-14.) Thus, Netflix's allegations regarding the prior art witnesses are sufficient. *See Schubert v. OSRAM AG*, No. 12-923-GMS, 2013 WL 587890, at *6 (D. Del. Feb. 14, 2013) (finding inconvenience to third party witnesses favored transfer where the defendant provided "at least some support for its position" even though the defendant did not present direct evidence that the prospective witnesses may refuse to testify in Delaware).

Having considered the private interest factors, the court will now weigh the public interest factors. First, the court considers practical considerations that could make the trial easy, expeditious, or inexpensive. *Jumara*, 55. F.3d at 879-80. This is a dispute between two companies physically located within Northern California. (D.I. 1 at ¶¶ 24, 43.) Netflix notes, and OpenTV does not deny, that aggregate litigation costs will likely be lower in the Northern District of California where witnesses and evidence are already located than in Delaware. (D.I. 14 at 16; D.I. 19.) Therefore, this factor weighs strongly in favor of transfer.

Regarding administrative difficulties, the court looks to the relative administrative difficulty in the two fora resulting from court congestion. *Jumara*, 55 F.3d at 879-80; *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 760 (D. Del. 2012). Netflix concedes that the relative administrative difficulty between this court and the Northern District of California is essentially the same. (D.I. 14 at 15.) Moreover, OpenTV notes that the District of Delaware has a significantly faster median time-to-trial in patent cases of 1.94 years compared to the 2.72 years

in the Northern District of California. (D.I. 19 at 10.) This factor therefore slightly weighs against transfer to the Northern District of California.

As far as local interests are concerned, this factor is typically neutral in patent litigation "because patent issues do not give rise to a local controversy or implicate local interests." *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008). On the other hand, however, "[w]hile the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffmann–La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) In the instant matter, there are significant connections between the Patents-in-Suit and California, as the products were designed and developed in California, and both parties' principal place of business is in Northern California. (D.I. 1 at ¶¶ 24, 43; D.I. 17 at 10.) Delaware, by contrast, has a less substantial interest in this action. As Netflix notes, and OpenTV does not deny, the only connection this action has with Delaware is the fact that both parties are incorporated here, and that the parties both offer services nationwide. (D.I. 23 at 9.) Delaware's resulting interest is less compelling than that of Northern California. *See Intellectual Ventures I LLC v. Checkpoint Software Technologies Ltd.*, 797 F. Supp. 2d 472, 486 (D. Del. 2011) (Explaining that Delaware's interest in adjudicating disputes involving Delaware corporations is counterbalanced by the Northern District of California's interest in deciding disputes "that arise within its boundaries involving companies headquartered there."). Ultimately, the court concludes that, while Delaware does have an interest in this action, California's interest is greater. This factor weighs in favor of transfer.

**V.   CONCLUSION**

Considering the *Jumara* private and public interest factors as a whole, the court believes that Netflix has met its burden of demonstrating that the interests of justice and convenience strongly favor transfer. Therefore, for the reasons stated above, the court will grant Netflix's Motion to Transfer to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

Dated: March 31, 2014

_____
CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| OPENTV, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1733 (GMS) |
| | ) | |
| NETFLIX, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

At Wilmington, this 31 day of March, 2014, consistent with the Memorandum issued this same date, IT IS HEREBY ORDERED THAT:

1. Netflix's Motion to Transfer to the United States District Court for the Northern District of California (D.I. 13) is GRANTED; and

2. The above-captioned action is transferred to the United States District Court for the Northern District of California.

_____
CHIEF, UNITED STATES DISTRICT JUDGE